Our next case for argument is 23-1741 SunSpec Alliance v. Tigo Energy. Mr. Marsh, please proceed. Thank you. Good morning, your honors. May it please the court, Philip Marsh on behalf of the SunSpec Alliance. The decisions on the appealed claims below should be reversed for at least three reasons. First, the board erred by failing to construe the predetermined number of skips limitations, or what I'm going to refer to by shorthand as the skips limitations, that were the basis for all of the board's decisions that are on appeal here. Second, the board legally erred in at least two ways when it concluded that the appealed claims were not obvious. And three, the board incorrectly found, contrary to the substantial evidence presented, that the appealed claims were not anticipated. Let me start with the first argument, that the skips limitations were not construed and should have been. It's undisputed that the parties were disputing the skips limitations. They were at the center of the arguments for each of the claims where the decision was made. Did you hear either IPR request a construction of predetermined number? We did not, your honor. We filed the petition, and I wish that I had the foresight to know what I know now. But at the time that we filed the petition, we thought that they could be interpreted according to their plain meaning. They weren't interpreted according to their plain meaning. They were loaded with other meaning, but that didn't happen until later in the process. TIGO did not file a preliminary patent owner's response. They only filed a patent owner's response. So it was by the time we hit the reply below that we knew that there was a dispute at all. But nonetheless, even though there was a dispute, the board did not construe those claims. Can you point me to anywhere where you raised before the PTAB that there would need to be an express construction of the predetermined number limitations? Well, we didn't know that there would need to be an express construction because in our view, we're reading the claims as the plain meaning and we think that there's... So the answer is there was never a request for express construction anywhere before... That's correct, your honor. Yes. So now in retrospect, though, what's happened that those terms were in dispute for every single claim at issue here. And the meaning of those terms were disputed. So according to O2micro and... O2micro says if there's a dispute in the construction, which you never presented to the board here, it would have to be construed. You didn't ask for a construction. Well, respectfully, we didn't ask for a construction, but the dispute was inherent to the arguments that were... What do you understand the dispute to be as to the different meanings? Yes, your honor. And what we have said is that these claims are system claims or apparatus claims and that there's a recitation of different components that are configured to do something after a certain time period. That time period is measured against, in the claims, a predetermined number of allowed skips in the 326 patent or other language that's similar in the 770 patent. What Tygo has said, on the other hand, and what the board agreed with, apparently, without giving an express construction, is that those skips terms needed to actually involve actual passage of the skips, the actual counting of the skips or monitoring of the skips. And so... Is that the difference between the two of you, that they say it requires counting and you don't think it requires counting? Correct. That's their argument based on the prosecution history and what the examiner stated during the prosecution history. They say that it's more than just the passage of a time period. It has to be. Otherwise, the claims would be invalid in view of the prior art that we've cited that measure the passage of a time period. Can you point us to somewhere in the PTAB decisions where we can see, basically, this dispute that you're contending is there? In the PTAB decision? Yes. I don't know if I can point to it in the PTAB decision off the top of my head, but I can tell you that in our opposing counsel's brief, well, actually, if you look at our reply brief, we cited on pages, what was it, 15 and 16 in the footnotes, every place that they mentioned that the claims required either monitoring, detecting, allowing, or counting of the skips. Those are footnotes six through nine. In addition to that, opposing counsel, in their brief, what they said is that the skips terms require two things, both a time period, which we agree with, and second, that they require a threshold number of allowed skips to elapse. We don't agree with that. That's the dispute. And they say that in the red brief at pages 28 and 40. So that was the crux of the decision for the board as well. You have a time period that corresponds to a predetermined number of skips, right? I'm sorry? Cronberg has a time period that corresponds to a predetermined number of skips, right? Correct. Yes. This is anticipating one of my other arguments. Yes. And but does Cronberg disclose the 770 limitation, which is a predetermined number of skips? It doesn't count the skips, right? Well, what it counts is it doesn't count the skips, right? I respectfully disagree. Okay. What what Cronberg says is that it counts a specified number of timing pulses. Those timing pulses are from a counter that is internal to the device. But it only counts when the signal is missing. The external signal from the device is missing. So if you sync up that signal with the external signal, every timing pulse would correspond with the skip from the external signal. It corresponds, a skip just means a missing communication or pulse as the board construed it. And so every single time that there's a pulse that gets counted, you know that that signal is missing so that you know you've missed the same number of skips as the internal counting number of pulses. Does that make sense? Did I answer your question? Go ahead.  So, so that, that gets into, let me, before I transition to obviousness, let me just say this. With respect to the claim construction, we've made our arguments. We believe it's a time period. We believe that's sufficient. We've made several arguments of why, if that's the case, we win on invalidity. But if this court disagrees with us, we would respectfully ask that either the court provide a clear construction or ring down to the board to provide a clear construction. The reason is there are multiple litigations that are pending right now. This is your problem. We can't solve your, your poor choices. You, you didn't ask the board for a construction. And so what the board did is they looked at the prosecution history and they looked at particularly the fact that the prior art allowed for a measured interruptions. And you inserted to get around the interruption prior art, the predetermined number of skips. You then didn't ask them for a construction. And so I'm looking at the board opinion and I don't really see them doing much more, which is by the way, a really good job on their part. Their, their job isn't to solve your litigation. Their job is to resolve the validity of the claims in light of the exact arguments you made in your petition. And I see them having done that. So no, you're not going to get a construction by me. You know why? You didn't ask them for one. You didn't argue one to them. And you know, they decided exactly narrowly what they're supposed to decide, which is what you argued in your petition. Is it correct or not? And they decided that the job of their, their job and my job is not to issue advisory opinions that will broadly help you for future litigation. It's to decide exactly what you argued. So you're not going to get a construction. Well, if I may, the, what the claim term says in the 3-2-6 patent is, it says it's a time period, a time period. What kind of time period? A time period that's longer than a or the predetermined number of allowed skips. So counsel, you're running a little low on time. So I'd love for you to turn to the argument about the PTAB potentially not addressing Cromberg with respect to the 3-2-1 petition. Sure. So that, that's the second of two arguments on obviousness. The first is that we have unrebutted expert testimony that was disregarded. But with regard to Cromberg, which is, which is an obviousness reference. It's important. It's in three of the four obviousness grounds below. Cromberg recites a specified number of timing pulses. And remember, the, the skips has been construed to mean a miscommunication. I guess, I guess, I'm sorry. I think that what you're being asked to do is explain to us not why you might win on Cromberg if the board decided it, but rather, as I understand your argument, the board overlooked this in its entirety. We can't make a fact finding about what Cromberg does or doesn't disclose in the first instance. I think what we're hoping you'll do is articulate what I think is your argument that the board literally just erred in evaluating that one. Is that right? Yes, fair enough, Your Honor. The board did say that we were not relying on Cromberg for the predetermined skips limitations. That was incorrect. We did rely on Cromberg, both in the petitions and based on our expert testimony, the unrebutted expert testimony on obviousness, that Cromberg did teach those elements. It was under bold headings that said the predetermined number of loud skips in the 326 or the corresponding claim terms in the 770. But opposing counsel points to a sentence where you say something to the effect of, I can't remember the other reference, because it was an M. Yeah. What's the other reference? Moyne. Moyne. Moyne? Moyne. Well, where you say something like, well, we're not relying on Cromberg for anything beyond what Moyne, or something like that. Can you articulate that better for me and help me understand why that isn't you basically waiving the argument you made in your petition?  Yeah. So what we said was that we, because we had asserted Moyne anticipated. And so what we were saying is the question, what we were quoted as saying is, I forget the exact language, but the gist of the argument was what we were trying to say is that we are not trying to remedy a deficiency in Moyne. We didn't view Moyne as having a deficiency, right? We had asserted it as an anticipatory reference. And so what we tried to say, and maybe it wasn't as clear as it should have been, is what we were trying to say is that nonetheless, if you need a traditional watchdog like the type in Cromberg, the combination of Moyne and Cromberg teach this limitation. And it referred back to earlier parts in the declaration and the petitions where that was the case, where it had been taught. That was our reply submission. I believe it was in the 326 patent, the reply submission, where we said that. But we weren't trying to, we were just trying to avoid disparaging Moyne, which we still believed was anticipatory, but also then add the teaching of Cromberg. We did rely on it for those purposes. That's. Did you do 321? Sorry? I'm just making sure I'm following. 321, sorry, yes. 321. I think I've said 326 a couple of times. Just making sure I'm on the same page. Yeah, in fact. You're into your rebuttal time. You know, you're free to use your remaining two and a half minutes however you wish, but do you want to save some? That's fine. I'll save for rebuttal. Thank you, Erin. Good morning, Your Honors, and may it please the Court. I'm going to start where we just left off. They did argue in the petition that Cronberg disclosed the predetermined number of skips, and they relied on Cronberg in the petition for that purpose, right? They relied on Cronberg, but they only relied on Cronberg to show that Cronberg detected an interruption. They alleged that that meant the skid flag. No, no, no, no. They specifically discussed the predetermined number of skips and said it was disclosed by Cronberg, right? Yes, Your Honor, but if you look at how they said it, they said Cronberg disclosed one skip. I'm in the petition. I think it starts at about page 144 or 145 of the appendix. Show me exactly. Let's go to 171, Your Honor. Just let me get there also, but on 171, I believe it's at the bottom of the page, if I'm remembering correctly, they explained that what they're looking for is the absence of a signal. On 169, under the heading, quoting the claim, it says Wayne teaches this feature. Yes, Your Honor. And they're going together with Cronberg. Correct. So they're using that combination for the claim limitation overall, but if we scroll down, they discuss Cronberg, and if you scroll from where you're looking down to page 171, and we look at the middle of page 171, the third line, they're explaining the basis for the combination. It would be one, merely be one of a finite number of solutions for detecting the absence of a signal. They go on, and then at the very last line of that page, which again, 171, Cronberg teaches a device that detects the absence of a periodic signal. Now, they go on to the next page, and they talk about the timing pulses. What those timing pulses are doing is counting elapsed time. You can see this clearly in figure two of Cronberg. When it's looking for a signal, the timing... Unfortunately for you, you might be exactly right, but you're asking me to make a fact finding about Cronberg that is kind of tough for me on a field. I am not asking Your Honor to do that. All I'm asking you to do is affirm what the board found. So they stated... Go ahead. Oh, I apologize, Your Honor, I don't... I don't see where the board made a fact finding about Cronberg. So I don't see how I'm affirming a fact finding about whether Cronberg underground two does or does not teach or render obvious the predetermined number of skips. That's the problem. I think that's why she made that. You're right, and there are two decisions, and the fact finding about Cronberg was in the other decision. In this decision, in 321, you're absolutely right, Your Honor. What the board did was rely on their statement in their reply brief, which I now... That they were not relying on Cronberg. What page? What page of the reply brief? So it's APX 1292. 1292, yeah. I will get there in a minute. But see, the header here is combined teaching of Moyne and Cronberg disclose the predetermined number of allowed skips, right?  That's the header. And then right beneath it, they say we're not relying on Cronberg. Or to remedy any failure of Moyne because they think Moyne already discloses it. And, you know, you lawyers do this all the time, and it's really a very smart tactic, which is, hey, I think I win on round one. And so I don't think you even need to get to round two. But if I don't win on round one, then I want you to get to round two. And don't they go on to say, but to the extent that a traditional watchdog of the type described in Cronberg is required, then you got to look at Cronberg. So see, like, isn't that the third sentence there? Look, we think we win on Moyne and Moyne alone. We don't even think you need to get to Cronberg. But if you don't agree, then get to Cronberg. So I do understand now that that could be what was meant. I don't think the board understood that from this.  I think the board understood something different. The board did find, though, that, and if you give me a moment, I'm going to find it. But the board did find in the other decision that Cronberg does not disclose anything about counting skips. But which is what you say is required. Which is what we say is required in both claims. But the claim language is different in the two patents. It is slightly different. But in both cases, there's a reference to skips. But in one, it says a time period corresponding to a predetermined number of skips. That's the 321. That's the one they didn't decide. And the other one talks about there being a predetermined number of skips. So the board, if I can find the language, I believe the board found that Cronberg only talks about interruptions. And interruptions is what we distinguished in the prior art. Because that is, in fact, what all that Cronberg decides. Just focusing on the 321 for now.  Rather than trying to read in what was done in the 770 IPR. OK. If you just focus on the 321, do you agree that there was a failure on the board's part to address whether or not Cronberg discloses the predetermined number of allowed skips? In the 321? No, I do not agree there was a failure. The board found that they didn't make that argument in their petition. And I was showing you earlier in my argument that what they argued to the board about Cronberg was that it discloses detecting the absence of a signal, which is an interruption, which is not what the claims require. The claims require more than an absence. The board's decision is saying that. I thought they relied on the abandonment of the argument in the reply brief, or supposed abandonment of the argument in the reply brief. I don't read it that way, Your Honor. Where? OK, let me go to the, let me find it in the decision. Well, in the part that I think you're referring to, that is the only thing that is stated. And the part that you're referring to, I believe, is page 23 of the decision. APPX 23. 23? Sorry, 23. But if you look up, it discusses what Cronberg does, and it explains what Cronberg does. And on the previous page, it refers, for example, to valid transitions in the signal. That's on page 22 of the decision. So those are valid transitions in that, of the— The sentence, they say, petition does not rely on Cronberg quoting the reply. They seem to find that the reply gave up the argument, right? That sentence says that. If we look at the immediately preceding sentence, for example, where they cite the pages 26 to 28 of the petition, that's what I was quoting to you earlier, where they were only arguing that Cronberg discloses an absence. I know, but then you look at— So it's not even just that one sentence that Judge Steich pointed out, or petitioner does not rely. Look at the last sentence on the same page. Accordingly, because petitioner does not rely on Cronberg to remedy this deficiency in Moyne, petitioner is not demonstrated by a preponderance of the evidence that it would have been unpatentable over this combination. So, I mean, it just— Look, unfortunately for you, the board in this IPR just didn't appreciate one of their arguments and didn't address it. You're probably right that you're going to prevail on remand on this argument based on what they said about Cronberg, especially in the other IPR, but they didn't say it here. And I can't import a fact-finding made in one IPR about a reference into a different IPR. I'm sorry that the board didn't more thoroughly resolve the case for you. I feel a little bad for your client in that regard, but I can't take a fact-finding from one and move it over here. I don't know what to do. That's fair, Your Honor, but what you can do, even if you decide that the board was not entitled to rely on that sentence and was not entitled to find that this argument had been waived, right, which— It wasn't waived. So, they didn't waive it. There's no question in my mind the board erred. But the board has a lot of things to look at. These petitions are fulsome, and there's a lot of little details and things, and I don't view that as a waiver. So, for me, I think that was an error to the extent the board did that. I'm just telling you right where you stand, you know, but the hard thing is I just don't think I can give you the relief that you want in the alternative. And I'm not saying you're not entitled to it, but I kind of think the board has to do it in the first instance. And I don't know. Maybe I'm all by myself up here. Perhaps you have the other two judges. You're all right. I think I'll make a further— She's not by herself. I'll make a further argument to you about this, because this entire decision was in the context of only one kind of argument. The argument that the only thing that they need to teach is zero skips. That as soon as they teach any interruption in a signal— I know. Why don't you jump to that argument? Because we had you start at the second, and, you know, you've got five minutes left. So why don't you pivot now to arguments about whether or not the board erred in not interpreting the predetermined number of skips in general? Because that's their primary argument on appeal. This other little argument affects one ground of one IPR. So why don't you pivot and defend the board on that other ground for now? Sure. So they did construe this limitation. They provided on page 18 of the decision we've just been discussing a specific statement about what it required. And they said, the middle paragraph on page 18, in light of the specification, the claim language, a time period longer than a predetermined number of allowed skips is directed both to a time period in which communication cannot be verified and to a threshold requiring the predetermined number of allowed skips that defines the time period. Do you read the board as requiring counting of the skips? In the other decision, yes. In the 770? Yes. But not here? I think you have to know that there is a number of allowed skips, which implies counting skips. So you have to... What happened, right, is the claims as originally filed, if you just scroll back one page to appendix 17, you can see figure four of the patent. And in figure four of the patent, there's two diamonds, two decisions. The first decision is verify communication with central controller, question mark. Then if the answer is no, the next decision is number of allowed skips exceeded. So what the board did is it found that by adding the language to the claims in the prosecution history about allowed skips, it changed the claims which were originally targeted at only detecting an interruption, to detecting an interruption, and that that interruption had lasted longer than the number of allowed skips. Exactly as shown in... But the trouble with your argument is that in Crunberg, that's exactly what happens. There's a time period that does correspond to an allowed number of skips. That's not true, Your Honor. If you look in figure two, and I can show you... I can get you the appendix page and we can all look at it together. But in figure two of Crunberg, you can see very clearly what happens. It's APPX 902. And the top line there, figure 2A, is the pulses that it's looking for. And figure 2G demonstrates the accumulation of timing pulses. It's counting timing pulses. What appendix page did you say I was supposed to look at? 902. I don't have an appendix page 902. My appendix goes from 900 to 907. What am I missing? You're missing figure two of Crunberg. I don't know how to explain that. Do you have a page 902? No, I've got 901 to 907. Yeah, we don't have any page 902. I mean, I'm sure there is a figure two, but it wasn't included in the appendix. Well, then I can't... That's not useful. Not at this exact moment.  You said you have 907. I think the description makes this point as well. And I think the description is on page 908, if you have 908. We do. Okay, so on page 908, it's discussing figure two beginning around line 19. And it points out that the waveform of... Yeah, but where's the operative language? Where's the thing you want me to say it's counting? Okay, so... Not counting. So there's the thing that's coming... The input signal that it's looking at is figure 2A, which is the periodic... Which column are you in? Column four, line 2425 is where it explains figure 2A. Which column? Column four.  And line 25? 24 and 25 refers to figure 2A, the waveform of figure 2A. It's a periodic waveform, so it has pulses. Now, if you go down, and it explains in the text that follows that, that there's a transition... Line number. That was the question, not a statement. I understood earlier. I may have to go back for these eventful. So I have to go back to line... To column three at line 2526. Valid transitions in the signal are identified and marked by a series of short event pulses. So where that waveform changes, it issues an event pulse. And it shows those also in figure two, which makes this easier. I'm sorry, we don't have it. The important part, okay, is that... Is really in column four... I'm going to let you say your important part. But I just want to say that the board didn't say all this stuff. And you are at a level of fact finding and a prior art reference that I feel willfully inadequately prepared to try to figure out on my own. Fair enough, Your Honor. The argument that I do think is important on this though, is that they only relied on Kronberg in their papers, in their IPR papers, which you can see at APX... Are you still trying to argue ground two? For goodness sakes. Did you pivot from what I asked you to turn to? All right, so coming back to the construction, why is the construction correct? The construction is correct for the following reasons. First, the claim language. The claim language... What's the construction? The construction is on APX 18, their statement... So there's a discussion that spans six pages, but the crux of it is on page 18. So is the construction you would like us to validate for the purposes of the 321 patent, the construction at page 18? It's directed to both a time period and to a threshold requiring a predetermined number of allowed skips that define the time period. Is that what you think the construction of predetermined skips is? Because... What's the larger phrase? It's the controller configured to determine that the communication has been interrupted for a time period longer than... Right, so this is not a construction of predetermined number of skips. No, it's the larger concept.  And they go on to... I think they're just proving that we need to send this back to the board. Okay. So the conclusion, if you look the next two pages down on page 20, they find from Moyne that petitioner does not identify any disclosure in Moyne involving a predetermined number of allowed skips, but relies on Moyne's description of detecting the absence of the signal once a set timing has elapsed. Look, there's no question that they don't get interruption because that's what they overcame. That's why they put all of these limitations in that have to do with a predetermined number of skips is because the prior art covered interruption. Correct. So what I really feel like the board did here was kind of say that. I don't feel like they gave you any specific construction on predetermined number of skips. I don't think anybody asked for one either, by the way. That's right. I think you said plain meaning or somebody said plain meaning. But I do think they found that the prior art didn't rise to the level beyond just interruptions. That's right. Now, Holmberg to the side for this one for you, unfortunately, but that's what I feel like they did here is that what you think they did? Yes, Your Honor, I agree completely. And for Kronberg, I understand we'll have to argue it again. Okay. Thank you. Let's restore all of Mr. Marsh's rebuttal time because we went over with Mr. Brown. Thank you, Your Honors. With respect to the obviousness argument, let me give you some sites that may be helpful. What patent are you talking about? So first for the 321 patent, the sites to where we argued it in the petition are Appendix 173 to 176. And the supporting declaration for the 321 patent, those sites are Appendix 242. Where you argued what? Is this the Kronberg? Kronberg. Ground two? With respect to the skips limitations, correct. Is it ground two or Kronberg? We'll waste any of your rebuttal time on that. If you're not reading the room, you don't have to waste your time on that issue. If you're talking about, if this is directed to whether the board addressed something that you did not waive, you don't need to spend your rebuttal time on that.  Talk about the 770 instead. Okay. So then for the 770, the site in the petition where we argued it under the headings Appendix 2035. Where you argued what? To 2038, where we argued that Kronberg helped teach the skips limitations of the 770 patent. And then the supporting declaration sites for that are Appendix 2113 and 2122. Now, those encompass more than just the section on the predetermined skips limitations. Because we refer back to prior description. Okay, but the issue with respect to the 770 is not whether you properly raised it. The board agreed that you properly raised it. The question is, was their decision wrong in finding that you didn't establish obviousness based on Kronberg? So let me address that. On Appendix 67, which we just saw, the board says, to the extent that petitioner tries to identify a predetermined number of skips in Kronberg, we do not find adequate support or reasoning for petitioner's assertion that a larger or smaller predetermined number of skips could be selected by choosing an appropriate resistor size. The board cites to the Dunton Declaration, our expert's declaration, at paragraphs 105 and 104. But if you go to those, those are on pages, those are on pages Appendix 2119 and 2120. If you go to those pages, you'll see in that section, we refer back to an earlier section with more description about Kronberg. And the important part is on, it's in paragraph 94, which is on pages 2115 and 2116, where our expert points specifically at the top of 2116 to Kronberg. What is your argument in a nutshell that there is some sort of error with respect to the 2770 patent? I appreciate the citations. My clerks know I love a good citation. But I want to know your argument in a nutshell right now. Yeah, the board said that there was no support for the expert's opinion, but didn't look back to what he had cited back to, which was column 11, lines 34 to 61 of Kronberg, which lays out the choosing of the resistor sizes to choose different time periods, to choose the different amount of time or the different number of skips that would have been allowed during that time period. That's what they missed. Your time is up. I thank both counsel. This case is taken.